THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JAMES SCOTT,<br><br>                              Plaintiff,<br><br>v.<br><br>DAVID ANGERHOFER et al.,<br><br>                              Defendants. | **MEMORANDUM DECISION &<br>ORDER DISMISSING MOST FEDERAL<br>CLAIMS, STAYING UTAH<br>CONSTITUTIONAL CLAIMS, &<br>REQUIRING SERVICE OF PROCESS<br>ON DEFENDANT BURNHAM**<br><br>Case No. 2:20-CV-14 DAK<br><br>District Judge Dale A. Kimball |

Plaintiff, a Utah state inmate, filed his initial pleading, entitled "Petition for Extraordinary Relief," in state court, under Utah Rules of Civil Procedure 65B(b) (regarding "[w]rongful restraints on personal liberty") and 65B(d) (regarding "[w]rongful use of judicial authority or failure to comply with duty; actions by board of pardons and parole"; and the federal civil-rights statute, 42 U.S.C.S. § 1983 (2023).[1] (ECF No. 2-2.) In that petition, Plaintiff specifically challenged his conditions of confinement under the Federal Constitution. (*Id.* at 1-7.) After a state hearing in which Plaintiff was given the option to proceed under Utah Rule 65B or § 1983, Plaintiff chose to pursue money damages under § 1983. (ECF No. 7, at 2.) Utah state defendants removed the action to this Court. (ECF No. 2.)

---

[1] The federal civil-rights statute reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (2022).
    Section 1983 creates the right of action only; it does not create any substantive rights, which must derive from the Constitution or federal statute. *See Nelson v. Geringer*, 295 F.3d 1082, 1097 (10th Cir. 2002).

After screening Plaintiff's initial pleading, which included several motions to supplement ("akin to motions to amend his petition"), this Court ordered Plaintiff to "file a single Amended Complaint including all of these 'supplements.'" (ECF No. 7, at 2.) This resulted in the filing of a pleading, entitled, "Amended Civil Rights Complaint." (ECF No. 11.) Around this time, Plaintiff also unsuccessfully moved for appointed counsel. (ECF Nos. 14-15.)

The Court then screened the Amended Complaint, dismissing (a) several defendants that were not affirmatively linked to causes of action; (b) an errant cause of action regarding denial of a grievance process; (c) allegations that were clearly barred by the statute of limitations; (d) a retaliation claim; and (e) a claim based on "a random and unauthorized deprivation of property." (ECF No. 15, at 2-8.) In that same screening order, the Court requested the remaining defendants to waive service regarding the remaining claims. (*Id.* at 8.)

Once the waivers of service were executed, Plaintiff took issue with the Court's screening and service Order, attacking the Court's analyses and dismissal of certain defendants and claims. (ECF Nos. 15, 17-19, 20.) To give Plaintiff the benefit of the doubt and a chance to possibly cure the deficiencies identified in the Amended Complaint, the Court stayed Defendants' obligation to respond to the Amended Complaint and gave Plaintiff an opportunity to file a second amended complaint. (ECF No. 21.)

Plaintiff then filed a Second Amended Complaint (SAC). (ECF No. 22.) Upon screening, the Court found many defects in the SAC, which it required Plaintiff to cure in a third amended complaint. (ECF No. 24.) Plaintiff filed a Third Amended Complaint (TAC), (ECF No. 25), regarding which the Court requested waiver of service by the single remaining defendant, Laura Cook, (ECF No. 26). Defendant Cook waived service and filed an answer. (ECF Nos. 28, 30.)

Plaintiff then filed a second motion for appointed counsel and, on November 23, 2022, an objection to the Court's Order from nearly eleven months prior, in which the Court ordered Plaintiff to cure his inadequate SAC. (ECF Nos. 24, 31-32.) Plaintiff's objection argues that "none of the 'complaint's deficiencies' the Court listed are valid," and that the Court effectively set him up for failure with its guidance on filing the TAC. (ECF No. 32, at 3-4.) Based primarily on these arguments, Plaintiff "requests that the Court withdraw Plaintiff's Third Amended Complaint . . . and allow his Second Amended Complaint . . ., supported by his motion (ECF No. 20), that the Court has 'GRANTED,' be the prevalent complaint."[2] (*Id.* at 6.) Plaintiff further asks the Court to "direct Defendant . . . Nelson (or the UDOC) to identify the fourth John or Jane Doe defendant, whose actions and time of actions are identified in Plaintiff's fourth (count IV) cause of action in his [SAC]." (*Id.*) Finally, he "requests that the Court direct the defendants to answer the claims in the [SAC]." (*Id.*)

A review of this procedural history reveals the Court's great patience with Plaintiff's filings, as a *pro se* inmate. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding *pro se* complaints "to less stringent standards than formal pleadings filed by lawyers"). Indeed, with specific guidance from the Court, Plaintiff has been allowed four cracks at drafting the most effective complaint possible. (ECF Nos. 2-2, 7, 11, 15, 21, 22, 24, 25.) Meanwhile, the Court has generously ordered service twice, only to be stymied both times by Plaintiff's unusual *post-service* objections. (ECF Nos. 15, 20, 26, 32.)

---

[2] As the Court has notified Plaintiff in the past, "The revised complaint must stand entirely on its own and shall not refer to, or incorporate by reference, any portion of the original complaint." (ECF No. 21, at 3 (quoting *Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir. 1998).) The Court also ordered that Plaintiff's SAC may "not refer to or include any other document." (*Id.* at 4.) Therefore, the Court's new screening of the SAC will not include any review of or reference to Plaintiff's motion, (ECF No. 20).

However, out of an abundance of caution to ensure Plaintiff is able to pursue his preferred iteration of his complaint, the Court grants his latest objection, which brings the litigation back to a focus on the SAC and eliminates all the litigation that has taken place around the TAC. (ECF No. 22, 25, 32.) The SAC is the *final* iteration of the complaint that will be considered in this action. To that end, the following documents are struck from the record: TAC, (ECF No. 25); Order Regarding Service of Process, (ECF No. 26); *Martinez* report, (ECF Nos. 35-36); Plaintiff's opposition and objections to the *Martinez* report, (ECF Nos. 41-42); and summary-judgment documents, (ECF Nos. 43, 45-46).

The Court now performs its *last* screening of Plaintiff's *final* complaint in this action--the SAC, as requested by Plaintiff--for dismissal of claims and defendants and a potential request for waiver of service on any remaining defendants and claims. (ECF No. 22.)

## SAC SCREENING

For alleged violations of his federal and state constitutional rights while held by Utah Department of Corrections (UDOC), Plaintiff seeks redress against four state defendants, in their individual capacities: Medical Director Bruce **Burnham**, Laura **Cook**, Warden Shane **Nelson**, and Jane or John **Doe**, (*id.* at 3-4); and one state defendant in his official capacity: Warden Devin **Blood**, (*id.* at 9). Plaintiff asserts claims of inadequate medical care; property deprivation, without compensation or due process; and denial of freedom of the press or freedom of speech. (*Id.* at 5-6.)

Having now screened the SAC (again and for the last time), (ECF No. 22), under its statutory review function,[3] the Court concludes that (a) all federal constitutional claims are

---

[3] The screening statute reads:

(a) Screening.—The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

dismissed, except for the inadequate-medical-treatment claim against Defendant Burnham; (b) further litigation of claims based on the Utah Constitution are stayed pending a future decision on the inadequate-medical-treatment claim; and (c) official service of process is warranted at this time for Defendant Burnham. *See* 28 U.S.C.S. § 1915(d) (2022) ("The officers of the court shall issue and serve all process, and perform all duties in such cases."). To screen the SAC, the Court thoroughly reviewed and liberally construed forty-eight pages, (ECF No. 22), in an effort to tease out any possible claims with affirmatively linked defendants, as discussed below.

## I. *SUA SPONTE* DISMISSALS FOR FAILURE TO STATE CLAIM

### A. STANDARD OF REVIEW

Evaluating a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).  When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory

---

(b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
  (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
  (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2022).

and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). Also, "[f]acts, not conclusions, must be pleaded--'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Ashcroft*, 556 U.S. at 678).

As the Court reviews the sufficiency of Plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corrs.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which of the prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants such as

> the government agency and a number of government actors sued in
> their individual capacities. . . . [I]t is particularly important in such
> circumstances that the complaint make clear exactly *who* is alleged
> to have done *what* to *whom*, to provide each individual with fair
> notice as to the basis of the claims against him or her, as
> distinguished from collective allegations against the state.

*Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249-50 (10th Cir. 2008) (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried their burden of providing "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants' or a list of the defendants named

individually but with no distinction as to what acts are attributable to whom, it is impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Id.*

*Pro se* pleadings are liberally construed, "applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). This means that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

## B. CLAIMS ABOUT MISSING BOOK

Plaintiff asserts Defendants **Cook** ("the only employee of U.C.I.'s Book Order Department") and **Nelson**, did not provide "due process," when they "refused Plaintiff the book he made prepayment for" without "just compensation," violating his federal and state constitutional rights. (ECF No. 22, at 11, 35.) More specifically, Plaintiff alleges the following facts:

1. On November 20, 2017, he "initiated a book purchase agreement" under prison policy and "prepayment for the book was issued." (*Id.* at 11.)

2. On February 7, 2018, after the book did not arrive as expected, a caseworker contacted Defendant Cook, on Plaintiff's behalf, and was told the book would be reordered. (*Id.* at 37.)

3. On March 1, 2018, still having not received the book, Plaintiff mailed a letter to Cook to ask about the book's status. (*Id.*)

4. Beginning on March 26, 2018, having not heard from Cook, Plaintiff initiated and completed the prison grievance process, from which he received no remedy. (*Id.*)

5. On October 25, 2018, Defendant Nelson responded to a letter Plaintiff had written to Nelson about the missing book, in which letter, Nelson acknowledged Plaintiff ordered and paid for the book, yet Nelson could find no record of Plaintiff receiving the book. (*Id.* at 37-39.) Nelson stated, "There is no further administrative process available to you for resolution of this issue." (*Id.* at 39.)

6. Between June 26, 2018 to March 17, 2020, Plaintiff looked for "legal resources available to him to discover any available and adequate Utah state-provided postdeprivation remedy for the intentional deprivation of property of a state inmate by a state official acting under color of state law[, but] was unable to discover any." (*Id.* at 39.)

Based on the language Plaintiff uses to describe his cause(s) of action, the Court cautiously construes the SAC to possibly allege three different constitutional claims: (1) a Fifth Amendment taking; (2) a deprivation of property without due process; and (3) violation of Plaintiff's right to freedom of the press or freedom of speech.

## 1. TAKING

Because Plaintiff uses language such as "just compensation," the Court reviews his allegations under the Fifth Amendment Takings Clause, which states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. That clause

applies to the States through the Fourteenth Amendment. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S.

528, 536 (2005). "A party challenging governmental action as an unconstitutional taking bears a

substantial burden." *Pittsburg County Rural Water Dist. No. 7 v. City of McAlester*, 358 F.3d

694, 718 (10th Cir. 2004) (quotation omitted).

      This claim fails. Specifically, Plaintiff has not alleged any facts to supporting the element

of a takings cause of action--that his property was taken for public use. *Cf. Lech v. Jackson*, 791

F. App'x 711, 714 (10th Cir. 2019) ("[W]hen the state acts pursuant to its police power, rather

than the power of eminent domain, its actions do not constitute a taking for purposes of

the Takings Clause."); *Cuervo v. Salazar*, No. 20-CV-0671-WJM-GPG, 2021 U.S. Dist. LEXIS

74536, at *23-24 (D. Colo. April 19, 2021) (concluding no viable Fifth Amendment takings

claim arising from defendants' purported destruction of plaintiff's property while executing

search warrant, when complaint was devoid of allegations suggesting defendants' action operated

to convert property to public use).

### 2. PROCEDURAL DUE PROCESS AND POST-DEPRIVATION REMEDIES

      "[A]n unauthorized . . . deprivation of property by a state employee does not constitute a

violation of the procedural requirements of the Due Process Clause of the Fourteenth

Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*,

468 U.S. 517, 533 (1984). And "the state's action is not complete until and unless it provides or

refuses to provide a suitable postdeprivation remedy." *Id.* The question is whether Utah

"provide[d Plaintiff] an adequate postdeprivation remedy for the alleged destruction of his

property." *Id.* at 534. This could be "a suit in tort," *id.* at 535, or "state-common-law remedies,"

*Hudson*, 468 U.S. at 533, or "the prison grievance procedure." *Griffin v. Hickenlooper*, 549 F.

App'x 823, 828 (10th Cir. 2013) (unpublished).

"[T]hat [Plaintiff] might not be able to recover under [state postdeprivation remedies] the full amount which he might receive in a § 1983 action is not . . . determinative of the adequacy of the state remedies." *Hudson*, 468 U.S. at 535. Further, it is not enough for a plaintiff to allege that he filed a grievance from which he got no relief; he must also allege "that the process was unavailable or inadequate to him." *Allen v. Reynolds*, 475 F. App'x 280, 283 (10th Cir. 2012) (unpublished); *Harris v. Chabries*, 114 F. App'x 363, 365 (10th Cir. 2004) (unpublished) (stating plaintiff "failed to allege that state law post-deprivation remedies . . . were inadequate" and, without "such an allegation, the taking of his property does not violate due process"); *Schlicher v. Gibbens*, No. 92-3087, 1993 U.S. App. LEXIS 9131, at *6 (10th Cir. Apr. 20, 1993) (unpublished) (holding, when inmate's property was seized and destroyed, he "clearly had an alternative state remedy: he presented both a property claim and an administrative grievance" and "[t]he fact that plaintiff did not receive relief through these avenues does not entitle him to present his claim under § 1983"); *see also Hudson*, 468 U.S. at 539 (O'Connor, J., concurring) (stating "in challenging a property deprivation, the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate").

Plaintiff apparently does not recognize that UDOC's grievance process *is* the "post-deprivation remedy" provided by the state. He alleges that he completed the grievance process, which ended without him receiving the book or the book's value. However, the law provides that it is the existence of the post-deprivation remedy that is dispositive, not the relief received or not. UDOC's grievance process fulfills the requirement that it provide a post-deprivation remedy for

Plaintiff's missing book and its value. Plaintiff has thus failed to state a claim upon which relief may be granted regarding property deprivation without due process. [4]

### 3. FREEDOM OF THE PRESS[5] OR FREEDOM OF SPEECH

Despite how he characterizes this cause of action, Plaintiff is asserting a claim of freedom of speech. *See Castro v. United States,* 540 U.S. 375, 381 (2003) (noting federal courts should ignore legal label attached to *pro se* party's claims "to create a better correspondence between the substance of [party's claims] and underlying legal basis"); *see also Warr v. Zavaras*, No. 09-CV-2477-WJM-KLM, 2011 U.S. Dist. LEXIS 46566, at *4 (D. Colo. Apr. 29, 2011) (construing freedom-of-press claim as "First Amendment freedom of speech claim").

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Indeed, corrections "officials may restrict an inmate's ability to possess reading material if such a restriction is justified by legitimate penological interests under the familiar *Turner v. Safley*, 482 U.S. 78 (1987), analysis." *Dalrymple v. Rosa*,

---

[4] Adamantly pursuing three theories under the Federal Constitution about this missing book, Plaintiff appears to strongly believe that he somehow necessarily has a remedy in federal court here; however, he

> as so many other pro se appellants, misperceives the use and purpose of § 1983. Section 1983 does not exist to right every wrong -- it creates no enforceable rights. Section 1983 serves only to ensure an individual has a cause of action for violation of the Constitution and federal laws. Courts have held, in this type of case, that the existence of the alternative state remedy supplies "due process" and thus there is no "deprivation" by the state. Accordingly, in P*arratt v. Taylor*, 451 U.S. 527 (1981), where an inmate sued a warden [under] § 1983 over the loss of a hobby kit, the Court held the existence of a state tort claims procedure supplied due process and no federal claim could be presented. *Parratt* applied only to a negligent taking. Subsequently, in *Hudson v. Palmer*, 468 U.S. 517 (1984), the *Parratt* principle was extended to intentional taking. Thus, [such a plaintiff] has no claim.

*Woolsey v. Dep't of Corrs.*, No. 91-1119, 1991 U.S. App. LEXIS 18184, at *3 (10th Cir. Aug. 1, 1991) (unpublished).

[5] "The freedom of 'the press' was widely understood to protect the publishing activities of individual editors and printers." *Swepi, LP v. Mora Cnty.*, 81 F. Supp. 3d 1075, 1171 n.30 (D.N.M. Jan. 19, 2015) (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (Thomas, J., concurring in judgment)).

No. 16-CV-875-MSK-KMT, 2018 U.S. Dist. LEXIS 52446, at *7 (D. Colo. Mar. 28, 2018) (citing *Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990)); *see also Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (holding *Turner* analysis applies to prison regulations about sending publications to inmates). To successfully state a claim here, Plaintiff must allege that each defendant, Cook and Nelson, had "the required state of mind to commit a constitutional deprivation, namely, deliberate indifference to [Plaintiff's] First Amendment rights." *Id.* at *11 (citing *Dodds v. Richardson*, 614 F.3d 1185, xx (10th Cir. 2010)).

Under *Turner*, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. 482 U.S. at 89. Four factors guide this determination of validity. *Id.* at 89-90. However, Plaintiff does not even acknowledge that a freedom-of-the-press or freedom-of-speech cause of action has elements and factors, like those found in *Turner*, *id.*, each of which he is required to support with allegations of specific facts. (ECF No. 22, at 13.) His allegations are so spare and cursory that they accuse Defendants of violating his freedom-of-speech rights, by merely not providing him the missing book or its value. These allegations completely lack detail and awareness of the elements of the alleged cause of action; and so the allegations are the very embodiment of the forbidden "'legal conclusion . . . couched as a factual allegation.'" *Renaud*, 2023 U.S. Dist. LEXIS 19808, at *8 (citation omitted).

Regarding his freedom-of-speech claim, then, Plaintiff has failed to state a claim upon which relief may be granted.

### 4. SUMMARY

All claims potentially raised by Plaintiff regarding his missing book and its value are dismissed for failure to state a claim upon which relief may be granted.

An alternative basis, for dismissing Defendant Nelson on federal constitutional claims regarding the missing book, is that the only facts alleged against Nelson regard his role in denying a grievance. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (stating grievance denial alone, with no connection to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983").

## C. POSSIBLE MENTAL OR EMOTIONAL HARM

Plaintiff possibly requests damages for mental and emotional injury, regarding failure to receive his book. (ECF No. 22, at 43.) Such damages are prohibited by 42 U.S.C.S. § 1997e(e) (2023), which reads, "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of a physical injury or the commission of a sexual act." Regarding the missing book claim, no physical injury is alleged by Plaintiff. Thus, any request for damages for mental or emotional injury is denied on federal constitutional claims.

## D. DENIED DELIVERY OF INTERNAL MAIL

Plaintiff asserts here that Defendant John or Jane Doe violated his federal and state constitutional rights to freedom of speech, regarding a grievance placed in an internal envelope addressed to the grievance office and deposited in an internal mail dropbox on November 1, 2017. (ECF No. 22, at 13, 41.) "This opened grievance was returned to Plaintiff--undelivered to the grievance office--on December 3, 2017 after [Plaintiff's] inquiry about it," which "denied Plaintiff his right to have his outgoing mail processed and delivered." (*Id.*)

"Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth

Amendment." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). But Plaintiff's mail item was not addressed to an outsider; it was internal mail.

Further, Plaintiff has made no attempt to allege facts that would allow an analysis under the seminal case governing mail issues vis-à-vis the First Amendment, *Turner*, 482 U.S. at 89. *See Parkhurst v. Lampert*, 339 F. App'x 855, 860 (10th Cir. 2009) ("The record in this case is not sufficiently developed for a proper *Turner* analysis, which requires a reasonableness inquiry . . . ."); *see also Gee v. Pacheco*, 627 F.3d 1178, 1188 (10th Cir. 2010) ("Because *Turner* allows prohibitions and restrictions that are reasonably related to legitimate penological interests, [Plaintiff] must include sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests." (emphasis in original)).

Indeed, the opening and returning of Plaintiff's grievance without delivery to the grievance office is not alleged to be based on a prison regulation. Instead, Plaintiff presents it as a one-off situation, naked of any allegations on motive, whether this was a mistake or done with intent to deprive Plaintiff of the grievance process. *Cf. Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990) (holding isolated incident of opening protected legal mail, without evidence of improper motive or resulting interference with right to counsel, does not give rise to constitutional violation). However, there is no constitutional right to a grievance process, so the fact that Plaintiff's grievance did not get to the grievance office did not violate his constitutional rights. *See Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) ("[T]here is no independent constitutional right to state administrative grievance procedures."). And, presumably "because [Plaintiff's] mail was not 'legal mail,' [Defendant was] authorized to open and read it." *McWilliams v. Schoeneman*, No. 96-1371, 1997 U.S. App. LEXIS 21182, at *4 (10th Cir. Aug.

11, 1997) (unpublished); *see also Beville v. Ednie*, 74 F.3d 210, 214 (10th Cir. 1996) ("In order to enforce permissible restrictions which are reasonably related to substantial government interests, corrections officers must be able to inspect all outgoing mail."). Finally, Plaintiff does not allege any prejudice or harm to him associated with the return of his grievance.

Plaintiff has failed to state a claim upon which relief may be granted regarding his opened grievance that was returned to him after he placed it in an internal mail box. This federal constitutional claim is thus dismissed.

### E. DEFENDANT BLOOD

Again, Defendant Blood is sued in his official capacity. (ECF No. 22.) The only remedy requested as to Blood is for the Court to order "a preliminary injunction [that] defendant Devin Blood (or current CUCF warden) [must] provide the plaintiff . . . the full name, title, and residence at the time of the actions alleged, for defendant John or Jane Doe." (*Id.*) But, based on the above section, the allegations against John or Jane Doe failed to state a claim upon which relief may be granted and were thus dismissed. There is no need for anyone to identify John or Jane Doe on the dismissed federal constitutional claim.

### III. CLAIM WARRANTING SERVICE OF PROCESS

The Court concludes that, against Defendant Burnham, Plaintiff appears to have stated a claim upon which relief may be granted. Under Federal Rule of Civil Procedure 4(c)(1), the Court therefore requests waiver of service from Defendant Burnham, who must answer Plaintiff's allegations of inadequate medical treatment under the Federal Constitution, found on pages 13-35 and 41-43 of the SAC, including addressing any statute-of-limitations issues, including the possibility of equitable tolling.

ORDER

**IT IS ORDERED** that:

**(1)** Plaintiff's second motion for appointed counsel, (ECF No. 31), is **DENIED**, for the same reasons stated in a prior order denying appointment of voluntary *pro bono* counsel, (ECF Nos. 14, 15). That past order stated, "[I]f, after the case develops further, it appears that counsel may be needed or of specific help, the Court may ask an attorney to appear *pro bono* on Plaintiff's behalf." (ECF No. 15.) No further prompting is needed from Plaintiff. Indeed, any further motions for appointed counsel shall be returned to sender by the Clerk of Court.

**(2)** Plaintiff's request to withdraw his Third Amended Complaint and reinstate his Second Amended Complaint is **GRANTED**. (ECF Nos. 22, 25, 32.) The Second Amended Complaint shall be the very last iteration of the complaint in this action. (ECF No. 22.)

**(3)** Plaintiff's request to direct UDOC defendant(s) "to identify the fourth John or Jane Doe defendant, whose actions and time of actions are identified in Plaintiff's fourth (count IV) cause of action in his [SAC]" is **DENIED**. (*Id.*) Against the John or Jane Doe, as set forth above, Plaintiff failed to state a federal constitutional claim upon which relief may be granted.

**(4)** The following documents are struck from the record: Third Amended Complaint, (ECF No. 25); Order Regarding Service of Process, (ECF No. 26); *Martinez* report, (ECF Nos. 35-36); Plaintiff's opposition and objections to the *Martinez* report, (ECF Nos. 41-42); and summary-judgment documents, (ECF Nos. 43, 45-46).

**(5)** Based on the Court's last screening of the final iteration of the complaint--the Second Amended Complaint--for failure to state a claim upon which relief may be granted, all federal constitutional claims against Defendants **Blood**, **Cook**, **Nelson**, and Jane or John **Doe** are **DISMISSED**. (ECF No. 22.)

**(6)** All claims brought under the Utah Constitution are **STAYED**, pending further litigation of the remaining federal constitutional claim against Defendant Burnham. *See Snyder v. Murray City Corp.*, 124 F.3d 1349, 1354 (10th Cir. 1997) ("[W]hen federal claims are resolved prior to trial, the district court should usually decline to exercise jurisdiction over pendent state law claims allow the plaintiff to pursue them in state court.").

**(7)** Under Federal Rule of Civil Procedure 4(c)(1), the Court requests waiver of service from Defendant Bruce **Burnham**.

**(8)** As to Defendant **Burnham**, the Clerk of Court shall mail:

**(a)** Notice of a Lawsuit and Request to Waive Service of a Summons, AO form 398; 2 copies of Waiver of the Service of Summons, AO form 399; and copy of the Second Amended Complaint, (ECF No. 22), and this Order to: **Utah Department of Corrections, Att'n: Correctional Program Coordinator--3rd Floor DPO Suite, 14717 South Minuteman Drive, Draper, Utah 84020**.

**(b)** Copies of Complaint and this Order to **Utah Attorney General's Office, Att'n: Litigation Division, Prisoner Litigation Unit, 160 East 300 South, Sixth Floor, P.O. Box 140856, Salt Lake City, Utah 84114-0856**.

**(9)** Defendant is cautioned that Federal Rule of Civil Procedure 4 requires Defendant to cooperate in saving unnecessary costs of service of summons and complaint. Under Rule 4, if Defendant does not waive summons service, after being asked by the Court to do so on Plaintiff's behalf, Defendant must bear service costs unless good cause be shown for not signing and returning the waiver form. If service is waived, this action will proceed as if Defendant had been served on the day the waiver is filed, except that Defendant need not file an answer until **60 days** from the date when the waiver request was sent. *See* Fed. R. Civ. P. 4(d)(3). (This allows

more days to respond than would be required if formal summons service is necessary.)

Defendant must read the statement at the waiver form's end that more completely describes the

party's duties about waiver. If service is waived after the deadline given in the Notice of a

Lawsuit and Request to Waive Service of a Summons but before Defendant has been personally

served, the Answer shall be due **60 days** from the date on which the request for waiver was sent

or **20 days** from the date the waiver form is filed, whichever is later.

**(10)**  If Defendant does not execute a waiver, attorney(s) for Defendant must file a notice

listing reasons a waiver has not been given. A report is due **30 days** from the date a request was

sent.

**(11)** Defendant shall answer the complaint, observing Federal Rules of Civil Procedure

and the following litigation schedule:

**(a)** If Defendant asserts the affirmative defense of Plaintiff's failure to exhaust

administrative remedies in a grievance process, Defendant must,

**(i)** within **60 days** of date of waiver request, file an answer;

**(ii)** within **90 days** of filing an answer, prepare and file a *Martinez* report[6]

limited to the exhaustion issue; and,

---

[6] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports.  The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims.  This, of course, will allow the court to dig beneath the conclusional allegations.  These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

**(iii)** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

**(b)** If Defendant challenges the complaint's bare allegations, Defendant shall, within **60 days** of date of waiver request, file a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).

**(c)** If Defendant chooses not to rely on an exhaustion defense and wants to pierce the complaint's allegations, Defendant must,

**(i)** within **60 days** of date of waiver request, file an answer;

**(ii)** within **90 days** of filing an answer, prepare and file a *Martinez* report addressing the complaint's substance; and,

**(iii)** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

**(d)** If Defendant wants to seek relief otherwise contemplated under procedural rules, Defendant must file an appropriate motion within **90 days** of filing an answer.

**(12)** Plaintiff must, within **30 days** of its filing, respond to the *Martinez* report.

**(13)** Plaintiff must, within **30 days** of its filing, respond to a motion to dismiss or summary-judgment motion. For Plaintiff's information and convenience, the Court has again attached the procedural rules governing summary-judgment practice.

**(14)** Defendant shall file a reply brief within **14 days** after the date Plaintiff's opposition is filed.

**(15)** A motion to dismiss or for summary judgment shall be deemed submitted as of the

date the reply brief is due. No hearing will be held on a motion unless the Court so orders at a

later date.

DATED this 13th day of March, 2023.

BY THE COURT:

_____

JUDGE DALE A. KIMBALL
United States District Court

# Fed Rule of Civil Procedure 56

## Rule 56. Summary Judgment

- **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
- **(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.
- **(c) Procedures.**
  - **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    - **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
    - **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
  - **(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
  - **(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
  - **(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
- **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
  - **(1)** defer considering the motion or deny it;
  - **(2)** allow time to obtain affidavits or declarations or to take discovery; or
  - **(3)** issue any other appropriate order.
- **(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
  - **(1)** give an opportunity to properly support or address the fact;
  - **(2)** consider the fact undisputed for purposes of the motion;
  - **(3)** grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
  - **(4)** issue any other appropriate order.
- **(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:
  - **(1)** grant summary judgment for a nonmovant;
  - **(2)** grant the motion on grounds not raised by a party; or
  - **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.
- **(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.
- **(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

## DISTRICT OF UTAH LOCAL CIVIL RULE 56-1

### *SUMMARY JUDGMENT: MOTIONS AND SUPPORTING MEMORANDA*

**(a) Summary Judgment Motions and Memoranda.**
A motion for summary judgment and the supporting memorandum must clearly identify itself in the case caption and introduction.

**(b) Motion; Requirements and Supporting Evidence.**
A motion for summary judgment must include the following sections and be supported by an Appendix of Evidence as follows:

(1) Introduction and Relief Sought:A concise statement of each claim or defense for which summary judgment is sought, along with a clear statement of the relief requested. The parties should endeavor to address all summary judgment issues in a single motion. If a party files more than one motion, the court may strike the motion and that require the motions be consolidated into a single motion.

(2) Background (Optional):Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Relief Sought section and the Statement of Undisputed Material Facts section. Factual summaries in the background section need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Statement of Undisputed Material Facts: A concise statement of the undisputed material facts that entitle the moving party to judgment as a matter of law. Only those facts necessary to decide the motion should be included in this section. The moving party must cite with particularity the evidence in the Appendix of Evidence that supports each factual assertion.

(4) Argument: An explanation for each claim or defense, of why, under the applicable legal principles, the moving party is entitled to judgment as a matter of law. The arguments should include a statement of each claim or defense on which the party is seeking summary judgment and supporting authorities. Any factual citations must cite to the Appendix of Evidence, not the Statement of Undisputed Material Facts.

(5) Appendix of Evidence: All evidence offered in support of the motion must be submitted in an attached appendix. The appendix should be proceded by a captioned cover-page index that lists each exhibit by number, includes a description or title, and if the exhibit is a document, identifies the source of the document. The appendix should include complete copies of all exhibits, including complete copies of depositions, to the extent possible. In cases where lengthy depositions are relied upon, the moving party need not submit the entire deposition. However, the moving party must submit at least four (4) pages before and four (4) pages after the cited depostition transcript pages(s), for a total of at least nine (9).

**(c) Opposition Memorandum Requirements and Supporting Evidence.**
A memorandum in opposition to a motion for summary judgment must include the following sections and, if applicable, be supported by an Appendix of Evidence as follows:

(1) Introduction: A concise summary explaining why summary judgment should be denied.

(2) Background (Optional): Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Introduction section and the Response to Statement of Undisputed Material Facts section. Factual summaries in the background
section need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Response to Statement of Undisputed Material Facts: A restatement of each fact the opposing party contends is genuinely disputed or immaterial, a concise statement explaining why the fact is disputed or immaterial, and a citation with particularity to the evidence upon which the non-moving party relies to refute that fact **8**. Any factual citations must reference the appropriate party's Appendix of Evidence, rather than either party's factual statements or

responses. The nonmoving party should not restate all of the moving party's statement of facts and should only respond to those facts for which there is a genuine dispute of material fact.

(4) <u>Statement of Additional Material Facts (if applicable):</u> If additional material facts are relevant to show that there is a genuine dispute of material fact, state each such fact and cite with particularity the evidence that supports the factual assertion from the appropriate party's Appendix of Evidence.

(5) <u>Argument:</u> An explanation for each claim or defense of why, under the applicable legal principles, summary judgment should be denied. Any factual citations must cite to the appropriate party's Appendix of Evidence, rather than either party's factual statements or responses.

(6) <u>Appendix of Evidence:</u> All evidence offered in opposition to the motion must be submitted in an appendix, utilizing the same procedure set out in DUCivR 56-1(b)(5). Counsel must make every effort not to duplicate evidence submitted by the other party. The appendix should be preceded by a cover page index that lists each exhibit by number, includes a description or title and, if the exhibit is a document, identifies the source of the document.

**(d) <u>Reply</u>**.

The moving party may file a reply memorandum. In the reply, a moving party may cite only additional evidence not previously cited in the opening memorandum to rebut a claim that a material fact is in dispute. Otherwise, no additional evidence may be cited in the reply memorandum, and if cited, the court will disregard it.

**(e) <u>Citations of Supplemental Authority</u>.**

When pertinent and significant authority come to the attention of a party after the party's memorandum in support of or in opposition to a summary judgment motion has been filed, or after oral argument but before decision, a party may promptly file a notice with the court and serve a copy on all counsel, setting forth the citations. There must be a reference either to the page of the memorandum or to a point argued orally to which the citations pertain, but the notice must state, without argument, the reasons for the supplemental citations. Any response must be made, filed promptly, and be similarly limited.

**(f) <u>Failure to Respond</u>.**

Failure to respond timely to a motion for summary judgment may result in the court's granting the motion without further notice, provided the moving party has established that it is entitled to judgment as a matter of law.

**(g) <u>Length of Memoranda and Filing Times</u>.**

(1) A motion for summary judgment and a memorandum in opposition must not exceed 10,000 words, or in the alternative, forty (40) pages. A reply brief cannot exceed 5,000 words, or in the alternative, twenty (20) pages. If the document exceeds the page limit, then the party must certify compliance with the word-count limit. This limitation includes the following items: introduction, relief sought, background, statement of undisputed material facts, response to statement of undisputed material facts, statement of additional material facts, argument, and conclusion. This limitation excludes the following items: face sheet, table of contents, table of authorities, signature block, certificate of service, and appendix. Motions to file an overlength brief are discouraged and will be granted only upon a showing of good cause and exceptional circumstances, as set forth in DUCivR 7-1(e). Â

(2) Filing times and length of memoranda are governed by DUCivR 7-1.