THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JAMES SCOTT,<br><br>                          Plaintiff,<br><br>v.<br><br>DAVID ANGERHOFER et al.,<br><br>                          Defendants. | **MEMORANDUM DECISION & ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Case No. 2:20-CV-14 DAK<br><br>District Judge Dale A. Kimball |

Defendant Burnham is the only remaining defendant here, with his Motion to Dismiss at issue. (ECF Nos. 47, at 16-17; 60.) Plaintiff responded to the motion. (ECF No. 63.) Burnham replied to the response. (ECF No. 64.) Having carefully considered the relevant documents and law, the Court in part grants Burnham's Motion to Dismiss based on his affirmative defense of the statute of limitations and in part denies the motion based on Burnham's affirmative defense of qualified immunity.

The claims against Burnham involve inadequate medical treatment.[1] (ECF No. 47, at 15.)

### I. LEGAL STANDARDS

#### A. Standard of Review

Evaluating a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th

---

[1] "Further litigation of claims based on the Utah Constitution [remain] stayed pending a future decision on the inadequate-medical-treatment claim." (ECF No. 47, at 5.)

Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). Also, "[f]acts, not conclusions, must be pleaded--'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Ashcroft*, 556 U.S. at 678).

## B. *Pro Se* Pleadings

*Pro se* pleadings are liberally construed, "applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). This means

that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff

could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his

confusion of various legal theories, his poor syntax and sentence construction, or his

unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.

1991). Still, it is not "the proper function of the district court to assume the role of advocate for

the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing

*Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

### C. Inadequate-Medical-Treatment Claims

The Eighth Amendment's ban on cruel and unusual punishment requires prison officials

to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v.*

*Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310

(10th Cir. 1998)). To state a cognizable claim under the Eighth Amendment for failure to provide

proper medical care, "a prisoner must allege acts or omissions *sufficiently harmful* to evidence

deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir.

1993) (emphasis in original) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Any Eighth Amendment claim must be evaluated under objective and subjective prongs:

(1) "Was the deprivation sufficiently serious?" And, if so, (2) "Did the officials act with a

sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

Under the objective prong, a medical need is "sufficiently serious . . .if it is one that has

been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218

F.3d 1205, 1209 (10th Cir. 2000) (citations & quotation marks omitted).

3

The subjective component requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).  "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle*, 429 U.S. at 105-06).  Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corrs.,* 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

## II. FACTS ACCEPTED AS TRUE FOR THIS ORDER ONLY

a. At the relevant time, Burnham was a UDOC physician. (ECF No. 22, at 3.)

b. On March 23, 2011, Burnham saw Plaintiff for gastroesophageal reflux disease (GERD). (*Id.* at 5.) Though Plaintiff warned Burnham that his current medication Prilosec was the only effective treatment for him and he worried about "esophageal cancer without proper . . . treatment," Burnham prescribed Zantac instead. (*Id.* at 6, 15.) This change in prescription "caused Plaintiff injuries of six months of unnecessary and prolonged pain, suffering and agony from the burning sensation of acid reflux, regurgitation of food, and acid backing up thru the nasal passages"; anxiety from fear of developing cancer; long-term intolerance to "the NSAID medications he previously used to treat his arthritis pain; and need for twice his past dose of GERD medication, costing him more money and potential side effects. (*Id.* at 6, 15, 17.)

4

c. On April 2 through July 18, 2011, during each of four separate medical encounters, Burnham "refused to authorize and restore Plaintiff's adequate treatment for GERD." (*Id.* at 17.)

d. On April 20, 2011, "Plaintiff requested and received a visit with the contract attorney (UDOC inmate legal services) to discover the legal options regarding the discontinuation of effective GERD treatment by . . . Burnham." (*Id.*)

e. On October 13, 2011, Burnham "finally authorized" Plaintiff's effective GERD treatment. (*Id.*)

f. On January 5, 2012, Plaintiff saw Burnham for "arthritis pain," for which Burnham noted Plaintiff was "currently on Naproxen [and] not much more to do," giving inadequate diagnosis and treatment and no order for magnetic resonance imaging (MRI). (*Id.* at 17, 19.)

g. On March 11, 2013, when Plaintiff saw Burnham to renew his Prilosec prescription, Burnham made a note "that plaintiff had concern of '[P]rilosec not working well for [GERD],'" upon which Burnham "discontinued Plaintiff's NSAID medications . . . [for] arthritis," stating Burnham "had placed a restriction on plaintiff's use of this class of medications." (*Id.* at 19, 21.)

h. On August 5, 2013, when Plaintiff saw Burnham for Plaintiff's extreme lower right back pain that had been "ongoing and recurring for about a year," Burnham refused an examination and treatment. (*Id.*)

i. On March 17, 2014, an X-ray report provided to Burnham showed degenerative disc narrowing and severe arthritis in Plaintiff's cervical spine. (*Id.*)

j. On March 28, 2014, though Burnham "diagnosed plaintiff's lungs as being clear and blood oxygen level was normal," Burnham "documented in M-track that plaintiff 'prob[ably] has [COPD].'" (*Id.*) Burnham (a) prescribed Zantac, a Ventolin trial, and ordered a chest X-ray; (b)

diagnosed Plaintiff's toe with arthritis and said Plaintiff needed NSAIDs; (c) provided no examination or NSAIDs or other treatments for toe, back and neck pain. (*Id.* at 21, 23.)

k. On August 7, 2014, Plaintiff saw Burnham for "agonizing and serious" back and neck pain, regarding which Burnham spent "less than two minutes"; did not examine Plaintiff; and said he would not authorize a muscle relaxant and Plaintiff "was just going to have to live with his pain." (*Id.* at 23, 25.)

l. On November 4, 2014, "plaintiff met with the UDOC provided contract attorney for legal advice regarding the continuous inadequate medical care being provided by the [Central Utah Correctional Facility (CUCF)] medical providers" and "was misled by the contract attorney to believe he did not have a 42 U.S.C. § 1983 cause of action." (*Id.* at 25.)

m. On November 7, 2014, during a visit, Burnham (a) discontinued "Sulindac," without finding out how it was working and whether there were side effects, or providing a replacement; (b) refused adequate treatment for neck, back, and toe pain; and (c) refused screening for esophageal cancer. (*Id.* at 25, 27.)

n. On October 30, 2017, Plaintiff saw Burnham for neck and back pain, recurring headaches, and difficulty sleeping, regarding which Burnham did not examine Plaintiff's neck and back, "only inadequately examined plaintiff's side for the infection on Plaintiff's back," and "didn't do anything at all for plaintiff's repeated requests for treatment of neck, back and toe pain." (*Id.* at 27, 29.)

o. On December 11, 2017, Plaintiff saw Burnham for neck and back pain, regarding which Burnham documented that three X-rays taken between 2009 to 2014 "all showed quite

minimal findings," despite Plaintiff understanding that such a characterization did not accurately describe the X-rays. (*Id.* at 29, 31.)

 p. On January 3, 2018, Plaintiff had an MRI, ordered by Burnham, with "[a]ll three areas of the MRI images . . . inconsistent with Dr. Burnham's conclusions he made on Dec. 11, 2017." (*Id.* at 31, 33.)

 q. On January 9, 2018, Burnham did "a chart review for plaintiff's MRI results," in which Burnham "documented that there is 'very minimal findings all three areas'"--conclusions that were "inconsistent with the MRI findings and plaintiff's medical care complaints." (*Id.* at 33.)

 r. On January 12, 2018, Plaintiff saw Burnham for follow-up treatment based on the MRI results regarding his neck and back pain. (*Id.*) In response, Burnham minimized the MRI results, did not physically examine Plaintiff, and provided no healthcare. (*Id.*)

 s. On January 15, 2019, Plaintiff's original lawsuit was filed in Utah state court. (ECF No. 63, at 12.)

 t. On January 10, 2020, Plaintiff's action was removed to federal court by the original defendants. (ECF No. 2.)

 u. On July 9, 2021, Plaintiff filed Second Amended Complaint, "which included an 8th Amendment claim for inadequate treatment of GERD." (ECF No. 22.)

### III. AFFIRMATIVE DEFENSES

### A. Statute of Limitations

Burnham challenges Plaintiff's older claims under the applicable statute of limitations.

### 1. Legal Standards

"The statute of limitations is an affirmative defense that must be raised by the defendant."

*Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022).

> Congress did not provide a statute of limitations for actions
> brought under § 1983. *Arnold v. Duchesne Cnty.*, 26 F.3d 982,
> 983-84 (10th Cir. 1994). Instead, a federal court looks to the law of
> the forum state to determine the applicable statute of limitations for
> a § 1983 action. *See id.* at 984. Typically, this entails looking
> toward the state statute of limitations for personal injury
> claims. *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212
> (10th Cir. 2014).

*Id.* at 989.

For cases initiated in Utah, § 1983 claims are subject to "the four-year statute of

limitation period of [Utah Code Ann. § 78B-2-307 (2023)]." *Larson v. Snow College*, 189 F.

Supp. 2d 1286, 1292 (D. Utah 2000); *see also Fratus v. Deland*, 49 F.3d 673, 675 (10th Cir.

1995) ("Utah's four-year residual statute of limitations . . . governs suits brought under

[§] 1983.").

> Determining the accrual date of a § 1983 action, however, "is a
> question of federal law that is *not* resolved by reference to state
> law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Because no
> federal statutory provision governs how to determine the accrual
> date, courts look to "federal rules conforming in general to
> common-law tort principles." *Id.* "Under those principles, it is 'the
> standard rule that accrual occurs when the plaintiff has a complete
> and present cause of action,' that is, when 'the plaintiff can file suit
> and obtain relief.'" *Id.* (quoting *Bay Area Laundry & Dry Cleaning
> Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201
> (1997)). Put another way, "[a] civil rights action accrues when the
> plaintiff knows or has reason to know of the injury which is the
> basis of the action," *Smith v. City of Enid*, 149 F.3d 1151, 1154
> (10th Cir. 1998) (quotation marks omitted), or "when the plaintiff's
> 'right to resort to federal court was perfected.'" *Bergman v. United
> States*, 751 F.2d 314, 316 (10th Cir. 1984) (quoting *Oppenheim v.
> Campbell*, 571 F.2d 660, 662 (D.C. Cir. 1978)).

*Herrera*, 32 F.4th at 990 (footnotes omitted).

"A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run," *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994); *see also Romero v. Lander*, 461 F. App'x 661, 669 (10th Cir. 2012) (§ 1983 case), and "it is not necessary that a claimant know *all* of the evidence ultimately relied on for the cause of action to accrue." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) (emphasis in original).

> Typically, facts must be developed to support dismissing a case based on the statute of limitations. *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). But "[a] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (internal quotation marks omitted). If from the complaint, "the dates on which the pertinent acts occurred are not in dispute, [then] the date a statute of limitations accrues is . . . a question of law" suitable for resolution at the motion to dismiss stage. *Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1050 (10th Cir. 1995); *see also Fernandez*, 883 F.3d at 1299 (stating court may grant motion to dismiss based on statute of limitations defense only "when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements").

*Herrera*, 32 F.4th at 991.

## 2. Analysis

### a. Defendant's burden

Defendant points to facts and dates found on the face of the SAC to support his statute-of-limitations defense. Plaintiff's original lawsuit was filed in Utah state court on January 15, 2019. (ECF No. 63, at 12.) Under the general principles here, that means his claims must have

accrued after January 15, 2015, to be valid. Indeed, relevant to this section, many of Plaintiff's allegations underlying his inadequate-medical-treatment claims spanned a period well before January 15, 2015--beginning on March 23, 2011, when Burnham allegedly denied Plaintiff the only effective treatment for his GERD. (ECF No. 22, at 5, 6, 15), and ending November 7, 2014, when Burnham allegedly discontinued medication without inquiry; refused treatment for neck, back, and toe pain; and declined to screen for esophageal cancer. (*Id.* at 25, 27.)

Plaintiff's allegations for that period show he realized in real time that he had serious medical problems (GERD, arthritis, and neck and back pain) that were inadequately treated. In other words, he knew or had reason "'to know of the injury which is the basis of the action.'" *Herrera*, 32 F.4th at 990 (quoting *Smith*, 149 F.3d at 1154). And "the dates given in the [SAC] make clear that the right sued upon has been extinguished'" as to Plaintiff's inadequate-medical-treatment claims from before January 15, 2015. *Id.* at 991 (quoting *Sierra Club*, 816 F.3d at 671).

**GERD**. By his own pen, Plaintiff persistently sought GERD treatment (for his "agony") nine times--on March 23, 2011, four times between April 2 to July 18, 2011, October 13, 2011, March 11, 2013, March 28, 2014, and November 7, 2014. (ECF No. 22, at 5, 17, 21, 25, 27.) His anxiety about this medical condition was so great that he reports that he "*feared for his life* . . . due to the well known and sizably increased risk of developing esophageal cancer from inadequate GERD treatment due to Dr. Burnham's actions." (*Id.* at 16 (emphasis added).) He also, on April 20, 2011, consulted with "UDOC inmate legal services . . . to discover the legal options regarding the discontinuation of effective GERD treatment by . . . Burnham.[2] (*Id.* at 17.)

---

[2] Plaintiff asserts that "[t]he contract attorney suggested plaintiff's claim was not significant enough to be a civil rights violation," instead "recommend[ing that] plaintiff speak to a medical malpractice attorney" and giving "plaintiff a list of attorneys." (ECF No. 22, at 17.) Plaintiff appears to fault the contract attorney for giving him poor advice that perhaps resulted in Plaintiff not filing this lawsuit in 2011 but instead waiting until 2019. However, it

**Arthritis**. Before the pivotal date of January 15, 2015, on which the statute of limitations would have started to run for any possible claims for this lawsuit, Plaintiff specified three visits for arthritis, regarding which he alleged Burnham provided inadequate or no treatment. (*Id.* at 17, 19, 21, 23.) The lack of treatment was actionable as of January 5, 2012, for four years; as of March 11, 2013, for four years; and as of March 28, 2014, for four years. Plaintiff also asserts that he had been told in the past that his arthritis "was significant enough to require medical attention and treatment." (*Id.* at 31.) Still, Plaintiff chose not to file his civil-rights suit until January 15, 2019. (ECF No. 63, at 12.)

**Neck and back pain**. Plaintiff allegations for the dates between August 5, 2013 and November 7, 2014--all outside the statute of limitations for this action--show him steadily pursuing help for his back and neck pain, using desperate language that punctuates how seriously he believed his health was being ignored. (ECF No. 22, at 21, 23, 25, 27.) He called his back pain "extreme," "ongoing," "recurring," "significant," "agonizing," and "serious," with the report to Burnham that he awakened nightly "with a painful knot in his back" and that he often had shooting pain from his back down to his leg. (*Id.* at 21, 23, 25, 29.) He further described himself as "suffering." (*Id.* at 29.) Perhaps most significantly, Plaintiff said he "had frequent flare-ups and muscle spasms that would drop plaintiff to his knees in the middle of a stride," which caused "excruciating pain" that "radiate[d] into plaintiff's legs, hips and into calfs, lasting several weeks before subsiding." (*Id.* at 19.) He made explicit that Burnham's response to his pain and despair

---

was Plaintiff's choice about what to do with the advice; he obviously recognizes this, couching the information he received from the contract attorney as "suggested" and "recommended." (*Id.*) The option of a civil-rights action was specifically on the table and was always an available option for him to trigger anytime within the applicable four-year period. The face of the SAC makes his understanding of this clear.

was aloof inaction, a flat-out "refus[al] to provide plaintiff any healthcare for his extreme and recurring back pain." (*Id.* at 21, 23, 25, 27, 29, 35.) He quotes Burnham as spurning treatment, saying things like, plaintiff "was just going to have to live with his pain" and Burnham "wasn't going to do anything more." (*Id.* at 23, 25, 27, 29.) On November 4, 2014, again, Plaintiff "met with UDOC provided contract attorney for legal advice regarding the continuous inadequate medical care" he received. (*Id.* at 23.) Again, Plaintiff took the advice into consideration and chose not to file a federal civil-rights complaint at that time. (*Id.*) Plaintiff is the only one who could make the call as to whether and when he would file a lawsuit.

**Past better care by other providers**. Plaintiff pointedly alleges many past instances, as compared with his lack of treatment by Burnham, when he received more attentive and effective medical care from other providers. (*See, e.g.*, *id.* at 19 ("[Burnham] refused to adequately diagnose or treat plaintiff's arthritis pains which were not currently being adequately treated and to which plaintiff had formerly received adequate treatment for."); *id.* at 31 ("Plaintiff also received previous treatment significantly greater than what was currently provided for these degenerative injuries."); *id.* (stating Plaintiff received past treatment for arthritis "but since transferring to Dr. Burnham's care comparable treatment is no longer available to plaintiff"); *id.* at 33 ("Dr. Burnham's prescribed treatment isn't anything close to the treatment plaintiff was previously provided . . . .") This shows that Plaintiff was aware of the difference in treatment in the very moment it was happening and that awareness would have given him more information upon which to decide whether to sue. He chose not to do so before January 15, 2019. (*See* ECF No. 63, at 12.)

**Conclusion**. The distinct and thorough detail with which Plaintiff alleged (a) the severity of Plaintiff's symptoms, (b) his persistence in seeking treatment, (c) past better treatment he had received, and (d) Burnham's inaction, all lead the Court to conclude that Plaintiff knew or had "'reason to know of the injur[ies] which [were] the bas[e]s of the action.'" *Herrera*, 32 F.4th at 990 (quoting *Smith*, 149 F.3d at 1154). These causes of action accrued at each separate time-- upon the dates clearly set forth in the SAC--that Plaintiff recognized in real time Burnham's deliberate indifference to his serious medical needs. *See Herrera*, 32 F.4th at 991. Based on Plaintiff's allegations, it seems Plaintiff made an explicit effort to identify that he was receiving constitutionally inadequate medical care just about every time he saw Burnham.

Applying the four-year statute of limitations here, the Court concludes that Plaintiff's claims against Burnham dated before January 15, 2015 were filed after the statute of limitations expired. (ECF No. 63, at 12.)

### b. Plaintiff's burden

That conclusion shifts the burden to Plaintiff "to identify a theory that allows [him] to overcome the statute[] of limitations and thereby render [his] claims timely." *Herrera*, 32 F.4th at 992. Plaintiff argues two such theories: equitable tolling and "continuous violations." (ECF No. 63.)

### i. Equitable tolling

"In a § 1983 action, [the Court] look[s] to state law for tolling rules." *Shrum v. Cooke*, 60 F.4th 1304, 1308 (10th Cir. 2023). Utah law provides for tolling under "the equitable discovery rule," which may apply in one of two circumstances:

> (1) a plaintiff does not become aware of the cause of action
> because of the defendant's concealment or misleading conduct or

> (2) the case presents exceptional circumstances and the application
> of the general rule would be irrational or unjust, regardless of any
> showing that the defendant has prevented the discovery of the
> cause of action.

*McBroom v. Child*, 2016 UT 38, ¶ 34 (quoting *Berneau v. Martino*, 2009 UT 87, ¶ 23 (internal

quotation marks omitted)).

Under this theory to allow him to escape the statute of limitations' expiration, Plaintiff

asserts "due to [Burnham's] fraudulent concealment and the deceptive and misleading legal

advise [sic] provided by the UDC provided contract attorney, the statute of limitations . . . is

tolled until Oct. 26, 2019--when plaintiff discovered concealment by the fraudulent COPD

diagnosis--under the equitable discovery rule." (ECF No. 63, at 7.) Plaintiff appears to conflate

fraudulent concealment and exceptional circumstances; thus, he urges, "This case presents

exceptional circumstances making it eligible for equitable tolling. There are four instances of

ongoing fraudulent concealment . . . ." (*Id.* at 10.)

Plaintiff alleges,

> [F]our instances of ongoing fraudulent concealment that prevented
> plaintiff from obtaining facts essential for a meritorious cause of
> action worthy of relief. On two instances the defendant
> fraudulently concealed facts concerning the esophageal damages
> plaintiff incurred as a result of the defendant's interference with
> plaintiff's previously prescribed treatment for GERD. The most
> notable was on Mar. 28, 2014 when the defendant diagnosed
> plaintiff with COPD after plaintiff's blood-oxygen saturation tested
> normal and lungs were "clear." The defendant continued to treat
> plaintiff for this incurrable [sic] life-shortening disease until he left
> the CUCF and plaintiff was diagnosed as COPD negative on Oct.
> 26, 2019 by another physician. The only reasonable explanation
> for the defendant's blatantly deceptive diagnosis was to conceal the
> esophageal damages that were causing symptoms. The defendant's
> deceptive tactics of fraudulent concealment on Mar. 11, 2013
> [when Burnham made a note "that plaintiff had concern of
> '[P]rilosec not working well for [GERD],'" upon which Burnham
> "discontinued Plaintiff's NSAID medications . . . [for] arthritis"]

> and on Mar. 28, 2014 [when Burnham "documented . . . that
> plaintiff 'prob[ably] has [COPD]'"] combined with the misleading
> tactics of the contract attorney on Apr. 20, 2011 and Nov. 4, 2014
> prevented plaintiff from obtaining facts essential for a meritorious
> cause of action capable of obtaining relief.

(*Id.* at 10-11 (quoting ECF No. 22, at 19, 21, 23).)

Plaintiff separately asserts elsewhere that Burnham's "refusal to provide an MRI until Jan.
3, 2018 concealed plaintiff's physical back injury preventing plaintiff's knowledge of a cause of
action for his inadequately treated back pain." (ECF No. 22, at 31.)

Plaintiff's arguments about four instances of fraudulent concealment are not well taken.
Instead, they are "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans v.
Lavine*, 415 U.S. 528, 536-537 (1974). In fact, Plaintiff's arguments are frivolous, in that they are
"conclusory" and "incoherent allegations[,] 'lack[ing] an arguable basis in either law or fact.'"
*Strege v. Comm'r, SSA*, No. 21-1311, 2022 U.S. App. LEXIS 4514, at *2 (10th Cir. Feb. 18,
2022) (unpublished) (quoting *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002)). As
such, the Court need not entertain them. *See Hagans*, 415 U.S. at 536.

Still, it is notable that it is not even possible to find a line of reasoning to follow within
the bulk of the allegations (which apparently cover three of the "four instances of fraudulent
concealment") that feature Burnham seeking to conceal Plaintiff's esophageal damage by
fraudulently misdiagnosing him with chronic obstructive pulmonary disease (COPD). This
especially makes no sense when Plaintiff's own writings (in the SAC) repeatedly emphasize his
preoccupation with his allegedly severe GERD symptoms and his conviction that his esophagus
was already damaged. Plaintiff apparently never stopped firmly believing his esophagus was
damaged, so Burnham's alleged concealment could not have been very successful. Also,

Plaintiff's allegations as a whole evince such a mistrust of Burnham that it seems unreasonable to believe Plaintiff would have allowed Burnham to distract him from his allegedly damaged esophagus by telling him that a different organ was defective. The fourth instance of "fraudulent concealment" regards a medical appointment on March 11, 2013 when Burnham made a note "that plaintiff had concern of '[P]rilosec not working well for [GERD],'" upon which Burnham "discontinued Plaintiff's NSAID medications . . . [for] arthritis." This scenario flatly falls in the category of "so attenuated and unsubstantial as to be absolutely devoid of merit." *Hagans*, 415 U.S. at 536. The logic is not comprehensible.

Plaintiff's arguments here are rejected as frivolous; they lack sense and congruity.

The Court next addresses Plaintiff's assertion that Burnham's "refusal to provide an MRI until Jan. 3, 2018 concealed plaintiff's physical back injury preventing plaintiff's knowledge of a cause of action for his inadequately treated back pain." (ECF 22, at 31.) But this just simply is not true. Plaintiff's allegations from the period outside the statute of limitations are jam-packed with emphatic, contemporaneous recognitions that his back was severely painful and Burnham was not providing treatment. Again, any alleged concealment by Burnham was useless, because Plaintiff reported himself to be keenly aware of his pain and lack of treatment. In terms of the statute of limitations, an MRI would apparently do nothing more than confirm what Plaintiff was apparently already very uncomfortably experiencing in the moment. Plaintiff's argument indicates that he misunderstands what amount of information he needed to trigger a legal action by the statute of limitations' expiration date. After all, he need not have known "the full extent of his injuries before the statute of limitations beg[an] to run." *Indus. Constructors Corp.*, 15 F.3d

at 969; *see also Baker*, 991 F.2d at 632 ("[I]t is not necessary that a claimant know *all* of the evidence ultimately relied on for the cause of action to accrue." (emphasis in original)).

The Court finally considers Plaintiff's vain argument that "the misleading tactics of the contract attorney on Apr. 20, 2011 and Nov. 4, 2014 prevented plaintiff from obtaining facts essential for a meritorious cause of action capable of obtaining relief." (ECF No. 63, at 11.) "Yet before a statute of limitations may be tolled under either situation, the plaintiff must make an initial showing that he did not know nor should have reasonably known the facts underlying the cause of action in time to reasonably comply with the limitations period." *Berneau*, 2009 UT 87, at ¶ 23. Plaintiff's visits to the contract attorney show that he did know the facts underlying his causes of action. He literally reviewed his experiences with Burnham and decided to set and keep appointments with the contract attorney to discuss legal action.

Plaintiff has not met his burden to show that equitable tolling rescues his untimely claims from the statute of limitations' operation.

### ii. Continuous violations

"[A] § 1983 litigant may rely on the continuing violation doctrine to overcome the statute of limitations where the first in a series of acts giving rise to a single violation occurs outside of the limitations period . . . ." *Herrera*, 32 F.4th at 997. "[T]he continuing violation doctrine 'applies when the plaintiff's claim seeks redress for injuries resulting from a series of separate acts that *collectively constitute one unlawful act*, as opposed to conduct that is a discrete unlawful act." *Id.* at 993 (quoting *Hamer v. City of Trinidad*, 924 F.3d 1093, 1098 (10th Cir. 2019)) (emphasis added) (internal quotation marks omitted). "'An important caveat to the continuing violation doctrine, however, is that it is triggered by continual unlawful acts, not by

continual ill effects from the original violation.'" *Id.* (*Hamer*, 924 F.3d at 1099 (internal quotation marks omitted)).

Plaintiff argues that Burnham's "series of unlawful acts of interfering with previously provided medical care and refusing to provide meaningful medical care together comprise of an accumulative and ongoing 8th Amendment claim of deliberate indifference to plaintiff's serious medical needs." (ECF No. 63, at 7.) Thus, he contends, "'the statute of limitations does not begin to run until the wrong is over and done with.'" (*Id.* (quoting *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983)).)

More specifically, Plaintiff maintains "that between Mar. 23, 2011 and Jan. 12, 2018 (inclusively) defendant continuously violated plaintiff's . . . right to be free from cruel and unusual punishment." (*Id.* at 12.) He expounds,

> Plaintiff's "GERD [maltreatment] claims" and "neck and back pain [maltreatment] claims" are interrelated claims. About two years after the seven month interference with plaintiff's GERD treatment, plaintiff's esophageal damages began to manifest causing plaintiff intolerance to the medications he used to treat arthritis pain due to the uncontrollable acid-reflux they began to cause. To conceal the problem, defendant discontinued plaintiff's arthritis treatment instead of establishing an alternative solution, agitating the condition further, resulting in unnecessary pain and suffering. Plaintiff was unaware of this concealment until discovering the COPD concealment after Oct. 26, 2019 and therefore did not include the GERD maltreatment claims in the initial Jan. 15, 2019 lawsuit.

(*Id.*)

Contrary to Plaintiff's arguments, though, the continuing violation doctrine does not save Plaintiff's claims. This is because "the claims are not premised on a series of individually unactionable occurrences that make out a violation only when combined." *Herrera*, 32 F.4th at

1002. To the contrary, each individual moment between Plaintiff and Burnham when Burnham allegedly showed deliberate indifference (e.g.,, did nothing) in response to Plaintiff's serious medical need (arguably, GERD, arthritis, or back pain), Plaintiff was eligible to file a federal § 1983 claim under the Eighth Amendment for failure to provide proper medical care. *See Olson*, 9 F.3d at 1477.

### 3. Conclusion

Burnham carried the burden of showing that Plaintiff's allegations supporting claims dated before January 15, 2015 are extinguished by the applicable statute of limitations. Plaintiff did not carry his burden of "identify[ing] a theory that allows [him] to overcome the statute[] of limitations and thereby render [his] claims timely." *Herrera*, 32 F.4th at 992. All Plaintiff's claims accruing before January 15, 2015 are therefore dismissed.

### B. Qualified Immunity

As to the claims accruing after January 15, 2015, Burnham now asserts the affirmative defense of qualified immunity as a basis for dismissal. (ECF No. 60, at 16.) In other words, Burnham contends he did not violate Plaintiff's clearly established constitutional rights, (*id.*), "creat[ing] a presumption that [of] immun[ity] from suit," *Truman v. Orem City*, 1 F. 4th 1227, 1235 (10th Cir. 2021) (quotation marks and citation omitted). This shifts the burden to Plaintiff to show otherwise. *See Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020). Having thoroughly reviewed all the parties' arguments and evidence, the Court concludes the qualified-immunity defense does not shield Burnham from further litigation here.

### 1. Remaining Claims

Plaintiff's remaining claims involve any allegations occurring after January 15, 2015. (ECF No. 63, at 12.) These are the outstanding allegations:

1. On October 30, 2017, Plaintiff saw Burnham for neck and back pain, recurring headaches, and difficulty sleeping, regarding which Burnham did not examine Plaintiff's neck and back, "only inadequately examined plaintiff's side for the infection on Plaintiff's back," and "didn't do anything at all for plaintiff's repeated requests for treatment of neck, back and toe pain." (ECF No. 22, at 27, 29.)

2. On December 11, 2017, Plaintiff saw Burnham for neck and back pain, regarding which Burnham documented that three X-rays taken between 2009 to 2014 "all showed quite minimal findings," despite Plaintiff understanding that such a characterization did not accurately describe the X-rays. (*Id.* at 29, 31.)

3. On January 3, 2018, Plaintiff had an MRI, ordered by Burnham, with "[a]ll three areas of the MRI images . . . inconsistent with Dr. Burnham's conclusions he made on Dec. 11, 2017." (*Id.* at 31, 33.)

4. On January 9, 2018, Burnham did "a chart review for plaintiff's MRI results," in which Burnham "documented that there is 'very minimal findings all three areas'"--conclusions that were "inconsistent with the MRI findings and plaintiff's medical care complaints." (*Id.* at 33.)

5. On January 12, 2018, Plaintiff saw Burnham for follow-up treatment based on the MRI results regarding his neck and back pain. (*Id.*) In response, Burnham minimized the MRI results, did not physically examine Plaintiff, and provided no healthcare. (*Id.*)

These allegations are taken as true for purposes of this Order only.

### 2. Legal Standards

When the qualified-immunity defense is raised, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). "A defendant is entitled to qualified immunity if the plaintiff fails to satisfy either prong." *Martinez*, 2023 U.S. App. LEXIS 17609, at *5.

A right was "clearly established" if it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). Moreover, such a right must be "generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 710 (10th Cir. 2011) (unpublished) (quoting *Zweibon v. Mitchell*, 720 F.2d 162, 172-73 (D.C. Cir. 1983)). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001) (quoting *Saucier v. Katz*, 533 U.S. at 202) (alteration in *Holland*, but not *Saucier*). A court should ask "whether the law put officials on fair notice that the described conduct was unconstitutional" instead of launching "a scavenger hunt for cases with precisely the same facts." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir.

2004). Indeed, based on existing precedent, the constitutional or statutory question must be "beyond debate." *al-Kidd*, 563 U.S. at 741.

The clearly established prong will generally be met if there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson*, 615 F.3d 1278, 1282 (10th Cir. 2010)).

### 3. Analysis

Plaintiff alleges that Burnham intentionally did not treat his serious medical needs. (ECF No. 22, at 27, 29, 33.) He then identifies on-point United States Supreme Court and Tenth Circuit precedent declaring, "'A plaintiff states a cognizable Eight Amendment claim for denial of medical attention if he "alleges acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."'" (ECF No. 63, at 15 (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1315 (10th Cir. 2002) (quoting *Estelle*, 429 U.S. at 106)).)

Burnham's argument that these facts represent a circumstance in which there was a difference of opinion about medical treatment provided is incorrect. (ECF No. 60, at 20.) The allegations are that Burnham did *nothing* when faced with Plaintiff's extreme pain. (ECF No. 22, at 27, 29, 33.)

On this Motion to Dismiss, taking the SAC's allegations as true and in a light most favorable to Plaintiff, Plaintiff has carried the burden accorded him by Defendant's qualified-immunity defense. As to Plaintiff's allegations occurring after January 15, 2015, Defendant's Motion to Dismiss is thus denied. (ECF Nos. 60; 63, at 12.)

## III. ORDER

**IT IS ORDERED** that:

**(1)** Defendant Burnham's Motion to Dismiss is **GRANTED** in part and **DENIED** in part. (ECF No. 60.)

**(2)** On the basis of Defendant Burnham's affirmative defense of Plaintiff's failure to file them by the applicable statute of limitations, all claims that occurred before January 15, 2015 are dismissed with prejudice.

**(3)** Regarding Plaintiff's claims accruing after January 15, 2015, Defendant Burnham's affirmative defense of qualified immunity fails. Those claims therefore remain in active litigation.

**(4)** The schedule for litigating the remaining claim(s) is as follows:

> **(a)** If Defendant asserts the affirmative defense of Plaintiff's failure to exhaust administrative remedies in a grievance process, Defendant must,
>
> > **(i)** within **90 days**, prepare and file a *Martinez* report[3] limited to the exhaustion issue; and,

---

[3] *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports.  The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims.  This, of course, will allow the court to dig beneath the conclusional allegations.  These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

**(ii)** within **90 days**, file a separate summary judgment motion, with

supporting memorandum.

**(b)** If Defendant chooses not to rely on an exhaustion defense and wants to pierce

the complaint's allegations, Defendant must,

**(i)** within **90 days** of filing an answer, prepare and file a *Martinez* report

addressing the complaint's substance; and,

**(ii)** within **90 days**, file a separate summary judgment motion, with

supporting memorandum.

**(c)** If Defendant wants to seek relief otherwise contemplated under procedural

rules, Defendant must file an appropriate motion within **90 days**.

**(d)** Plaintiff may, within **30 days** of its filing, respond to *Martinez* report if

desired.

**(e)** Plaintiff must, within **30 days** of its filing, respond to the summary-judgment

motion. For Plaintiff's information and convenience, the Court has attached the

procedural rules governing summary-judgment practice.

**(f)** Defendant shall file a reply brief within **14 days** after the date Plaintiff's

opposition is filed.

**(5)** The summary-judgment motion shall be deemed submitted as of the date the reply

brief is due. No hearing will be held on a motion unless the Court so orders at a later date.

**(6)** Plaintiff must tell the Court of any address change and timely comply with Court

orders. *See* D. Utah Civ. R. 83-1.3(e) ("In all cases, counsel and parties appearing *pro se* must

notify the clerk's office immediately of any change in address, email address, or telephone

number."). Failure to do so may result in this action's dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule-- except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19-- operates as an adjudication on the merits.").

**(7)** No time extensions shall be granted to Defendant.

**(8)**  As to Plaintiff, extensions of time are disfavored, though reasonable extensions may be granted. Any motion for time extension must be filed no later than **14 days** before the deadline to be extended.

**(9)** No direct communication is to take place with any judge. All relevant information, letters, documents, and papers, labeled with case number, are to be directed to the Clerk of Court.

**(10)** Defendant's motion for leave to file a surreply is **GRANTED**. (ECF No. 73.).

DATED this 2nd day of October, 2023.

BY THE COURT:

JUDGE DALE A. KIMBALL
United States District Court

# Federal Rule of Civil Procedure 56

## Rule 56. Summary Judgment

- **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
- **(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.
- **(c) Procedures.**
  - **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    - **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
    - **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
  - **(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
  - **(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
  - **(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
- **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
  - **(1)** defer considering the motion or deny it;
  - **(2)** allow time to obtain affidavits or declarations or to take discovery; or
  - **(3)** issue any other appropriate order.
- **(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
  - **(1)** give an opportunity to properly support or address the fact;
  - **(2)** consider the fact undisputed for purposes of the motion;
  - **(3)** grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
  - **(4)** issue any other appropriate order.
- **(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:
  - **(1)** grant summary judgment for a nonmovant;
  - **(2)** grant the motion on grounds not raised by a party; or
  - **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.
- **(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.
- **(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH LOCAL RULE**

**DUCivR 56-1 SUMMARY JUDGMENT MOTIONS AND MEMORANDA**

**(effective December 2022)**

**DUCivR 56-1 SUMMARY JUDGMENT MOTIONS AND MEMORANDA**

**(a) Compliance with DUCivR 7-1**.

A motion for summary judgment, response, and reply must comply with DUCivR 7-1 in addition to the requirements in this rule.

**(b) Motion**.

A party must address all summary judgment issues in a single motion. If a party files more than one summary judgment motion at the same time, the court may strike the motions and require that the motions be consolidated into a single motion. A motion for summary judgment must be titled "Motion for Summary Judgment," be supported by an Appendix of Evidence, as described below in 56- 1(e), and include the following sections:

(1) Introduction and Relief Requested. A concise statement of each claim or defense for which summary judgment is sought and a clear statement of the relief requested.

(2) Background (Optional). An optional section to provide context for the case, dispute, and motion. If included, this section should be placed between the Relief Requested and the Statement of Undisputed Material Facts sections. Factual summaries in the background need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Statement of Undisputed Material Facts. A concise statement of the undisputed material facts that entitle the moving party to judgment as a matter of law. Only facts necessary to decide the motion should be included in this section. The moving party must cite with particularity the evidence in the Appendix that supports each factual assertion.

(4) Argument. An explanation for each claim or defense, establishing, under the applicable supporting authority, why the moving party is entitled to judgment as a matter of law. The argument section should include a statement of each claim or defense on which the party is seeking summary judgment and supporting authorities. Any factual citations must cite to the Appendix.

**(c) Response**. A response to a motion for summary judgment may be accompanied by an Appendix, if applicable, and must include the following sections.

(1) Introduction. A concise summary explaining why summary judgment should be denied.

(2) Background (Optional). An optional section to provide context for the case, dispute, and motion. If included, this section should be placed between the Introduction section and the Response to Statement of Undisputed Material Facts section. Factual summaries in the background section are not limited to undisputed facts and do not need to cite to evidentiary support.

(3) Response to Statement of Undisputed Material Facts. A party must restate only those specific facts the opposing party contends are genuinely disputed or immaterial, providing a concise statement explaining why the fact is disputed or immaterial and a citation to the evidence used to refute the fact. The responding party should not restate undisputed facts. If a fact is inadmissible, the responding party must object, as provided in DUCivR 7-1(b), rather than moving to strike the inadmissible fact. Any factual citations must reference the appropriate Appendix.

(4) Statement of Additional Material Facts (if applicable). If additional material facts are relevant to show that there is a genuine dispute of material fact, the party must state each additional fact and cite

with particularity to the Appendix that contains the supporting evidence. Do not include duplicate copies of evidence already in the record. Instead, the party must cite to evidence in a previously filed Appendix.

      (5) Argument. An explanation for each claim or defense, establishing, under the applicable supporting authority, why summary judgment should be denied. Any factual citations must cite to the appropriate party's Statement of Undisputed Material Facts.

**(d) Reply**.

      The moving party may file a reply. In the reply, a party may cite to evidence that was not previously cited only to rebut a claim that a material fact is in dispute. Otherwise, a reply may not contain additional evidence, and, if it does, the court may disregard it.

**(e) Appendix of Evidence**.

      (1) All evidence cited to in a motion, response, or reply must be compiled in an appendix. Do not include duplicate copies of evidence already in the record. Instead, the party must cite to evidence in a previously filed Appendix.

      (2) The Appendix must:

            (A) include a captioned, cover-page index that— (i) lists each exhibit by number; (ii) includes a description or title of the exhibit; and (iii) identifies the source of the exhibit;

            (B) include complete copies of all exhibits, including deposition transcripts. For lengthy deposition transcripts, the party may submit the relevant pages of the deposition and the 4 pages before and 4 pages after the sections cited. Manuscript transcripts are permitted, unless otherwise ordered by the court.

**(f) Failure to Respond**. When a party fails to timely respond, the court may grant the motion without further notice if the moving party has established that it is entitled to judgment as a matter of law.